**UNITED STATES of America,**
Plaintiff,

v.

**ONE BLACK 1999 FORD CROWN VICTORIA LX, Bearing Vehicle Identification Number 2FAFP74W5XX111836,**
Defendant.

Nos. CIV. A. 99–11647–WGY,
00–10110–MBD.

United States District Court,
D. Massachusetts.

Oct. 17, 2000.

Shelby Wright, U.S. Attorney's Office, Boston, MA, for plaintiff.

Anthony M. Cardinale, Boston, MA, for defendant.

## MEMORANDUM AND ORDER

YOUNG, Chief Judge.

### I. INTRODUCTION

Pursuant to 21 U.S.C. § 881(a)(4), the United States has moved for *in rem* forfeiture of a 1999 Ford Crown Victoria (the "Car"). The Car was originally confiscated in connection with a search warrant issued by the Quincy District Court. After a hearing, the state court issued an order that the Car be returned to the owner, Richard May ("Mr. May") because the Commonwealth had failed to present sufficient evidence that it had an interest in the Car. The United States now seeks forfeiture and Mr. May opposes the motion claiming that the state court judgment precludes an action in the federal court.

### II. FACTUAL AND PROCEDURAL HISTORY

The following facts are undisputed. This case begins with a random inspection by United States Customs officials of a United Parcel Service package from Canada. The package contained a quantity of methamphetamine and a floppy disc. On March 11, 1999, the Weymouth Police were contacted by Customs officials regarding the package and its destination—Wizard Entertainment in South Weymouth. Based on this information, Officer Burke of the Weymouth Police obtained a search warrant from the Quincy District Court providing that, upon the delivery of the package, the police could seize the drugs, "monies, signature of UPS deliveries, papers, journals, and any and all material [used] to facilitate in the unlawful distribution of methamphetamine ...." Verified Compl. Ex. 1.

The Weymouth Police, in concert with Customs Special Agents, orchestrated the delivery of the package and proceeded to arrest the person accepting delivery as well as Edward May ("May"), the ultimate recipient. When May arrived to pick up the package, he was driving the Car. Upon his arrest, the officers seized the package, various employment and personal papers, credit cards, and the Car.

Whether the Car was seized pursuant to Mass. Gen. Laws ch. 276, § 3 (2000),[1] or under the cognate federal statute, 21 U.S.C. § 881 (2000),[2] is the subject of some

---

1. The state statute provides:

   If an officer in the execution of a search warrant finds property or articles therein described, he shall seize and safely keep them, under the direction of the court or justice, so long as necessary to permit them to be produced or used as evidence in any trial. As soon as may be, thereafter, all property seized under clause First of section one shall be restored to the owners thereof; and all other property seized in execution of a search warrant shall be disposed of as the court or justice orders and may be forfeited and either sold or destroyed, as the public interest requires, in the discretion of the court or justice ....

   Mass. Gen. Laws ch. 276, § 3.

2. The federal statute provides:

   (a) Subject property

   The following shall be subject to forfeiture to the United States and no property right shall exist in them:

   .   .   .   .   .

   (4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1), (2), or (9).

   .   .   .   .   .

   (b) Seizure procedures

   Any property subject to forfeiture to the United States under this section may be seized by the Attorney General ....

   (c) Custody of Attorney General

   Property taken or detained under this section shall not be repleviable but shall be deemed to be in the custody of the Attorney General, subject only to the order and de-

dispute, and ultimately led to a plethora of court proceedings. The Car, registered to May's father, Mr. May, was in the custody of the Weymouth Police. Mr. May filed a Motion for Return of Property (the "State Motion") on March 15, 1999 in the Quincy District Court. On May 3, 1999, May and his parents were contacted by certified mail regarding the United States' intention to begin administrative forfeiture proceedings relating to the Car. The Car was removed from Weymouth Police custody by the United States Drug Enforcement Agency ("DEA") on May 14, 1999. On June 7, 1999, the DEA received the claim and cost bond from Mr. May thereby forcing the DEA to adjudicate the merits of the forfeiture in federal court. Thus, there was both the State Motion seeking release of the Car and the potential for a similar motion in the federal court.

On June 18, 1999, before an action was filed in the federal court, the state court held an evidentiary hearing regarding the legality of the seizure. Although there is some dispute whether the federal government's interest was represented at this hearing, the argument that the state court lacked jurisdiction because the Car was seized pursuant to federal law was presented to the court by the Commonwealth. On September 10, 1999, the Quincy District Court issued a "Finding and Order" which stated that "[l]ocal Weymouth Police had physical control of the car and left it in their possession until after this motion was filed in court. The court maintains jurisdiction over the car." *Commonwealth v. May,* No. 9956–001661 (Mass.Dist.Ct. Sept. 10, 1999) (Dinnean, J.). Although the court ruled it had jurisdiction, it concluded that "the Commonwealth has no evidence that the owner of the car either was involved in his son's drug activity or even knew of them." *Id.* Consequently, the motion to return the Car was allowed.

Prior to the issuance of the "Finding and Order," on August 4, 1999, the United States filed a Verified Complaint for Forfeiture in Rem (the "Federal Motion") in the United States District Court for the District of Massachusetts. The Federal Motion asserted that there was probable cause to believe that the Car was subject to seizure and forfeiture under 21 U.S.C. § 881(a)(4). In response, Mr. May, the registered owner of the vehicle, filed a motion to dismiss based on the Quincy District Court's order. Through counsel, Mr. May argued that this Court lacked subject matter jurisdiction because the state court had properly exercised and maintained jurisdiction over the Car. Moreover, he asked that the Court order the United States to turn over the Car in compliance with the state court order.

A hearing before this Court was initially held on November 10, 1999. At this hearing, the United States argued that the state court lacked subject matter jurisdiction to adjudicate the forfeiture of the Car. *See* Tr. at 2 (Nov. 10, 1999). In essence, the United States asked this Court to treat the state court judgment as a nullity. *See id.* The Court declined the invitation to declare the state court order void. Instead, the Court ordered that the United States appeal the state court order within sixty days. *See id.* at 6–7. If it failed to do so, the Car would be returned to Mr. May. These rulings vindicated the principle that once a sovereign has assumed jurisdiction over a res, another sovereign will refrain from acting until compliance with the first sovereign's orders. *See United States v. $79,123.49,* 830 F.2d 94, 95 (7th Cir.1987); *United States v. $2,542,* 754 F.Supp. 378, 380 (D.Vt.1990).

The United States did not appeal the state court decision. The Car was returned to Mr. May on February 9, 2000, and the United States voluntarily dismissed the Federal Motion without prejudice. Two days later, the United States re-seized the Car. An Emergency Motion

---

crees of the court or the official having jurisdiction thereof.

21 U.S.C. § 881.

to Quash Seizure Warrant and Return Property (the "Emergency Motion") was filed in federal district court by Mr. May's attorney. The Emergency Motion was denied by this Court, not on the merits, but because there was no evidence that the re-seizure had violated either the state court order or the previous order of this Court. A subsequent motion was filed and the issue of the re-seizure is now before this Court.

## III. DISCUSSION

### A. Jurisdiction

Mr. May argues that the state court properly exercised and maintained jurisdiction over the Car, held a full hearing on the merits in which the interests of the United States were represented, and resolved the matter in favor of him. Consequently, according to Mr. May, this Court should give full faith and credit to the state court's ruling and require the United States immediately to return the Car to him. The United States counters that even if the state court's jurisdiction was proper, a point it does not concede, it extended only to order the release of the Car under *state* law. Once the state court order was satisfied, the state court's jurisdiction over the car ended.

■ It is well established that only one court may exercise in rem jurisdiction over property at a time. *See $79,123.49*, 830 F.2d at 95; *$2,542*, 754 F.Supp. at 380. "When a State and a Federal court each proceeds against the same res, 'the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other.'" *Commonwealth v. Rufo*, 429 Mass. 380, 382, 708 N.E.2d 947 (1999) (quoting *Penn Gen. Cas. Co. v. Pennsylvania ex rel. Schnader*, 294 U.S. 189, 195, 55 S.Ct. 386, 79 L.Ed. 850 [1935]; citing *Commonwealth v. One 1987 Ford Econoline Van*, 413 Mass. 407, 413, 597 N.E.2d 430 [1992]). Principles of comity and federalism underlie the doctrine. Pursuant to the doctrine, it is evi-

dent that state and federal courts cannot exercise *concurrent* jurisdiction over the same res. That, however, is not the case here.

■ Here, the property was seized pursuant to a search warrant issued by the Quincy District Court. According to state statute, "property seized in execution of a search warrant shall be disposed of as the court or justice orders . . . ." Mass. Gen. Laws ch. 276, § 3. Thus, the Quincy District Court properly exercised *in rem* jurisdiction over the Car. In so doing, it concluded that the Commonwealth did not have an interest in the property and ordered the Car returned to Mr. May. Once the order was issued and (eventually) obeyed, the state court's jurisdiction over the property evaporated.

The United States now wants to adjudicate its rights to the property pursuant to federal statute. *See* 21 U.S.C. § 881. Section 881(a)(4) provides that "[a]ll conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, [or] possession" of a controlled substance are subject to forfeiture. *Id.* The state court order cannot, nor does it attempt to, preclude the forfeiture of the Car under federal law. Indeed, "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of any action [of] forfeiture . . . incurred under any Act of Congress . . . ." 28 U.S.C. § 1355(a). Thus, the jurisdiction of the Quincy District Court was limited to disposition of the property under state law. The Finding and Order issued by the Quincy District Court reflects this restriction.

The holding in *Commonwealth v. Rufo*, 429 Mass. 380, 708 N.E.2d 947 (1999), relied on by Mr. May, is not to the contrary. There, the Supreme Judicial Court simply held that the Boston Municipal Court did not have in rem jurisdiction over the property, seized in a warrantless search, when it issued its order. *See id.* at 383, 708 N.E.2d 947. Thus, the court never ad-

dressed the situation where, as here, the state properly exercised its jurisdiction under state law and then a federal action was instituted.[3]

The Second Circuit addressed a factually similar scenario in *United States v. One 1987 Jeep Wrangler*, 972 F.2d 472 (2d Cir. 1992). There, the state court found that the state did not have an interest in the Jeep and returned it to the claimant. Subsequently, the United States seized the Jeep and began forfeiture proceedings. The claimant argued in federal district court that the state court order precluded further proceedings of forfeiture. The Second Circuit disagreed. "The scope of the state court's jurisdiction was limited to adjudicating the [claimant's] rights in the Jeep as they were implicated by the state criminal proceeding. The state court judge did not, nor could he have, adjudicated the federal government's interest in the Jeep as that interest arises under the federal forfeiture statute." *Id.* at 479.

The Court is persuaded by this argument. Congress has clearly stated that only the federal district court has jurisdiction to decide forfeiture cases under federal law. *See* 28 U.S.C. § 1355. It would be contrary to the dictates of Congress to allow a state court decision, based on state law, to interfere with this Court's jurisdiction.

**B. Merits**

██ For the United States to obtain a judgment of forfeiture, it must demonstrate probable cause establishing a nexus between the seized property and the illegal drug activity. Once the United States has met it probable cause showing, the burden shifts to Mr. May to demonstrate that the factual predicate for forfeiture has not been met. Because the focus of this case has been the jurisdictional issue, the Court has not been fully briefed on the merits.

Thus, until such brief is submitted, the Court will withhold further comment.

## IV. CONCLUSION

The Motion to Quash Seizure Warrant and Return Property is hereby denied. [Docket No. 1 M.B.D. No. 00–101100–MBD] The Court rules that jurisdiction is appropriate in this Court. The parties must now brief the merits of the seizure. Such briefs and affidavits shall be filed within thirty days of the date of this memorandum and order.

---

**3.** Moreover, in *Rufo,* the state court had declared the seizure unconstitutional. Unconstitutionality of a seizure would, in theory, seem to effect both the state and federal interest in the property. Here, the state court simply ruled that the Commonwealth did not have an interest and did nothing to implicate the federal interest.